IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Netflix, Inc., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>The Partnerships and Unincorporated Associations Identified on Schedule A,<br><br>Defendants. | ) | No. 26 C 6081 |

<u>Memorandum Opinion and Order</u>

Plaintiffs Netflix, Inc., Netflix Studios, LLC, Netflix US, LLC, and Netflix Worldwide Entertainment, LLC (collectively, "Netflix") make shows and movies, many of which come with their own lines of merchandise. The dozens of defendants listed on Schedule A allegedly make and sell knockoffs of that merchandise, and Netflix sued to stop them. Three of those defendants, Godalithic, DUNHA 2026, and Fuxingxin (the "instant defendants"), have moved to dismiss the complaint against them for insufficient service of process. I grant their motion only to the extent that I quash service.

## I.

Netflix operates a streaming platform on which are available shows and movies from many other producers, but Netflix also generates some of its own content. One of its most successful outings in recent years was the movie *KPop Demon Hunters*, which has been a sensation among young people.[1] Capitalizing on that popularity, enterprising bootleggers including, allegedly, the instant defendants, began producing knockoff *Demon Hunters* merchandise to be sold from storefronts on websites like Amazon and Temu, operating out of the People's Republic of China. Netflix, jealous of its merchandizing revenues, filed suit. That is to say, this is a typical Schedule A case.[2]

As in a typical Schedule A case, Netflix moved for and obtained leave to serve process by email, given that all the many defendants were based in China. Netflix moved for and I entered a temporary restraining order which shut down the defendants' online

---

[1] Netflix was the distributor, while Sony Pictures Animation produced the movie. Regardless, Netflix seems to own the merchandising rights. ECF 1 at 3–7.

[2] I assume the parties' familiarity with the legal landscape in this arena, inasmuch as it has been the subject of extensive litigation in recent months. While I treat it briefly above, readers seeking a more fulsome explanation may refer to my prior opinion in *Deckers Outdoor Corp. v. AKEANH6X696JN*, 2026 WL 1847507, at *1–*2 (N.D. Ill. June 26, 2026).

stores and directed the websites hosting them to freeze their funds. After the entry of that TRO, Netflix moved for a preliminary injunction along the same lines as the TRO, and I entered one. Likewise as usual, most defendants never appeared, some settled, and a scant few, the instant defendants among them, litigated.

What changed the trajectory of this case, and most Schedule A cases along with it, is that while it was pending, the Seventh Circuit handed down its decision in *Kangol LLC v. Hangzhou Chuanyue Silk Import & Export Co., Ltd.*, 177 F.4th 793 (7th Cir. 2026). There, the court settled what had been an ongoing dispute and found that email service on Chinese defendants was impermissible and that plaintiffs must proceed by way of the Hague Convention for Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters. *Id.* at 798-99. In brief, and in general, the Hague Convention requires service process through a signatory's designated "Central Authority," not by email or other means.[3] In the wake of the *Kangol* decision, the instant defendants have disputed the email service they received in this case.

[3] For more on the Hague Convention and its interaction with the Federal Rules of Civil Procedure, see another recent opinion in *Deckers Outdoor Corp. v. A AO*, 2026 WL 1802901, at *2-*3 (N.D. Ill. June 23, 2026).

## II.

The instant defendants have asked me to quash service and to both dismiss the case against them and dissolve the injunction restraining the operation of their allegedly counterfeit storefronts. Their first request is undeniable. The others are not. As to the second, quashal and not dismissal is the proper remedy for improper service. And as to the third, the validity of the injunction depended on notice, not service, and the instant defendants had notice.

### A.

Netflix does not concede that email service as rendered in this case was improper, but does recognize that, after *Kangol*, I would find it improper. So, in response to the instant defendants' motion to dismiss under Fed.R.Civ.P. 12(b)(5), Netflix simply initiated service on the instant defendants at the addresses they list on their websites by way of China's Central Authority under the Hague Convention. That done, Netflix asks me to deny the instant motion as moot. The instant defendants reply in two ways.

First, the instant defendants write that the lack of proper service deprives me of personal jurisdiction such that I must dismiss the case. Not so. The instant defendants have moved under Rule 12(b)(5), concerning technically inadequate service, not under Rule 12(b)(2), concerning jurisdiction. The proper action in

the case of insufficient service, if there is a reasonable possibility that plaintiff will be able to effect service, is to quash and allow the plaintiff to try again.[4] *Chronister v. Sam Tanksley Trucking, Inc.*, 569 F. Supp. 464, 470 (N.D. Ill. 1983).

Second, the instant defendants complain that the PRC's Central Authority takes a very long time to serve process on

---

[4] From Wright & Miller:

> Motions under Federal Rules of Civil Procedure 12(b)(4) and 12(b)(5) differ from the other motions permitted by Rule 12(b) somewhat in that they offer the district court a course of action—quashing the process without dismissing the action—other than simply dismissing the case when the defendant's defense or objection is sustained. Numerous motions under these subdivisions have been treated as motions to quash service of process. Usually a movant requests dismissal and quashing in the alternative or asks for both forms of relief.
>
> The federal courts have broad discretion to dismiss the action or to retain the case but quash the service that has been made on the defendant. Of course, the difference between the two results is not substantial. In the case of a dismissal, the plaintiff merely reinstitutes the action and has process served again, making sure that the earlier defect in the summons or the mode of service has been corrected. When process is quashed, only the service need be repeated.
>
> As the cases cited in the note below illustrate, service generally will be quashed and the action preserved in those situations in which there is a reasonable prospect that the plaintiff ultimately will be able to serve the defendant properly.

5B Fed. Prac. & Proc. Civ. § 1354 (4th ed.).

domestic defendants, up to six months or more, if at all. This is, one would think, a dangerous line of argument, because when a country ceases to engage with and serve process under the Hague Convention, generally, the Convention will no longer apply to defendants in that country. *Nuance Comms., Inc. v. Abbyy Software House*, 626 F.3d 1222, 1237–38 (Fed. Cir. 2010) ("Rule 4 was not intended to burden plaintiffs with the Sisyphean task of attempting service through the Hague Convention procedures when a member state [here, Russia] has categorically refused to effect service.") (cleaned up). The instant defendants may thus wish to be wary when complaining about the sluggishness of the method of service they asked for. As it is, given that no one has presented competent evidence about China's Central Authority, I decline to dismiss the case while service through the Hague Convention is pending.

**B.**

The instant defendants next argue that, even if I do not dismiss, I must dissolve the preliminary injunction entered against them because the email service they received was invalid. The initial issue here is that the instant defendants raised this contention in a reply brief, which is cause to find waiver. *Satkar Hospitality Inc. v. Cook County Bd. of Review*, 819 F. Supp. 2d 727, 739 (N.D. Ill. 2011).

But even if that were not so, a reading of the relevant rule shows service was not required. Federal Rule of Civil Procedure 65 governs the entry of preliminary injunctions. It reads: "(1) Notice. The court may issue a preliminary injunction only on notice to the adverse party." Fed.R.Civ.P. 65(a). Notice and not service of process was the prerequisite. *See H-D Michigan, LLC v. Hellenic Duty Free Shops S.A.*, 694 F.3d 827, 842, 846 (7th Cir. 2012).

Here, Netflix filed its complaint on May 22, 2026. It moved for service by email on May 26, 2026. I granted that motion on May 28, 2026, and Netflix sent out service of process, directed to the email addresses defendants had listed on their websites, on June 16, 2026. Netflix moved for the entry of a preliminary injunction that same day. The instant defendants appear to have received those emails, given that they then entered their appearances on June 25, 2026. It seems likely that the instant defendants had been working on the case since before June 25, though, given that they filed a motion to dismiss the next day, June 26, 2026. Regardless, they had notice of and chose not to oppose Netflix's motion for a preliminary injunction, which I granted also on June 26, 2026. Under the rule, that was enough. *H-D Michigan,* 694 F.3d at 842, 846 (7th Cir. 2012) (finding the entry of a preliminary injunction following actual notice by the defendants appropriate in a Hague Convention context).

**III.**

The instant defendants' motion to quash service is granted. Their motion to dismiss and their motion to lift the preliminary injunction—to the extent that the reply in support of their motion to dismiss attempted to constitute a new motion—are denied.

**ENTER ORDER:**

Elaine E. Bucklo

**Elaine E. Bucklo**
United States District Judge
Dated: September 11, 2026